We'll hear the last case on the calendar, which is Harrison & Sons v. CIR. Good morning, Your Honors. Philip Garrett Panitz on behalf of the appellants. Your Honors, this is our second appeal to the Ninth Circuit in this matter. The first appeal, this Court reversed and remanded the case to the United States Tax Court regarding the issue of Mrs. Harrison's reasonable compensation, indicating that her compensation should have been evaluated based on her actual role as president of the corporation. When we went back to the tax court, the tax court refused to allow any additional evidence, testimony, or any additional expert testimony regarding Mrs. Harrison's role as president of the company. Is it your position that the tax court had an obligation to reopen the record, or is the scope of the mandate limited to simply asking the tax court judge, based on the evidence you adduced at the trial, articulate your justification for the numbers that you arrived at as reasonable compensation? Isn't that all we asked the tax court to do? It wasn't clear, and we had a phone conference with the tax court judge to argue the point as to what should we be doing now as far as additional evidence. The tax court indicated that we should submit two motions, two independent motions, one to open the record, the other to simply augment briefing. It denied our motion with regard to augmenting the record and granted our motion with regard to rebriefing the issue. What additional evidence would you have presented beyond what you presented in the first trial? The only additional evidence that we wanted to indicate to the tax court that we thought would be helpful because we had put on substantial evidence of what her role was as president of the company was some kind of comparison to government municipalities, which nobody had introduced to the tax court before, because government municipalities in dealing with trash haulers, it's such a unique, the government's expert, the IRS's expert, did not really go into that. He had comparison of similar-sized companies, but it was such a special, unique, that we thought it might help the tax court in understanding, you know, for a trash hauler what the difference would be. But the tax court indicated that that would not be helpful. So we rebriefed the case, and we reemphasized the evidence that we had put on before with regard to her role as president of the company and also the return on equity that an independent investor would have had in the case. Did you make a proffer to the tax court judge as to what your expert on comparison of governmental agency trash hauling contracts would look like? We indicated to the tax court judge in our motion the reason why we thought that an expert would be useful. No, no, no. But I think you're missing my question. There's a difference between explaining why you need an expert and a proffer as to what your expert would say. Honestly, I don't recall right now exactly. It seems to me that the problem here is did the tax court on remand adequately articulate what we asked the tax court to do? And putting aside for the moment the question of whether or not the record was adequately developed the first time around, could you address what the tax court did on remand and why it was inadequate to establish? Absolutely. And my position is that what the tax court seized upon was this court's last sentence in its opinion, which was at the very least Mrs. Harrison's reasonable compensation should not have dropped below that of her son's during the audit years. And the tax court, in its ultimate conclusion, determined that her salary was rounded up to the nearest $100,000, took her son's, the highest paid son's, salary for each of the years and nearly rounded up without any evaluation as to what her role in the company was or why she should receive that salary based on her being the president of the company and what duties she performed for the company. There was no analysis of that, which is what I thought this court had remanded to the tax court to determine. Can we consider in deciding the merits of the second appeal what the tax court said in its written order the first time around? Because the tax court did spend a fair amount of time explaining and evaluating Mrs. Harrison's work and noting in particular that for the tax years in question she was now pretty much retired vis-à-vis her sons in the day-to-day management of the business and that her role was really more like a spokesperson, representative. She held the title of chairman of the board, but it didn't sound like the board met very often. I mean, there were a lot of explanations the first time around. There were explanations, but they seemed to rely on the government's expert witness based on the hypothetical that was posed to the government's expert witness, which was not the facts of the case. When we, and I was the initial, I did the initial trial too, we put on continuous witnesses from each of these municipalities, mayors, city council people, who indicated that their dealing with the company was with Mrs. Harrison, was not with her sons, that she was the public face of the company. And so the tax court judge basically cried uncle, said, enough, I'm going to stipulate that she's the public face of the company. Right. But I guess the question I was focusing on was he also said she's now in her 80s, right? She was at the time. Okay. And without diminishing at all the value of a person who's been associated with the company for that long, I thought the tax court looked at the fact that she wasn't coming in to the business every day as she had done, you know, working 60-hour weeks for many, many years before that. But for the tax years in question, yes, she was the face of the company, but she wasn't as active in the day-to-day operations as her sons now are. And for that reason, she wasn't entitled to a huge premium above what the sons were being paid. There was actual conflict in the tax court's conclusions regarding those issues, because on one hand he said that she was working at a minimum of 40 hours a week. He concluded that in his first opinion in this case. So on one hand he's saying, well, she's working 40 hours a week, which seems to me like a normal work week, but she's not working as much as her sons. Well, one of her sons, Ralph, worked and testified that he worked about 70 hours a week. He was the one of the sons that was repairing the trucks. He was working a lot of overtime, grease and sweat, making sure that the garbage trucks worked. That doesn't mean, however, that Mrs. Harrison's role in the company wasn't greater than Ralph Harrison's role in the company, because she oversaw all of it. The IRS only had one witness besides their expert. Trisha Honigsberg, an employee of the company, came in to testify, and I assume the IRS brought her in to testify that she wasn't there that much to corroborate what the government's theory of the case was. But instead what she did testify to is that Mrs. Harrison oversaw all of it. In other words, each of the individual sons had their delegated duties, but they all reported to her, and she was active 40 hours a week in running the company. She set the policy of the company, which is what a CEO does. The CEO of Wal-Mart, I just recently saw on Fortune 500, he said he's going to turn Wal-Mart into a green company. Well, he's not in the trenches selling product. He's determining what the policy of the company is, and that's what Mrs. Harrison did. She was the head of the company, and her sons answered to her. They agreed in testimony that they never they always worked out a consensus as to what the direction of the company should be. But she was the one who everybody fed to. All three of her sons brought their ideas to her, and ultimately they reached a consensus. But the judge said in his opinion that she worked 40 hours a week. That's not retired. I want to ask you about our standard of review in a case like this. Judge Halpern says in his final order that he paid quite a bit of attention to our Elliott case, which sets up a pretty good basis for evaluating these 162A cases. And the tax court sees hundreds of them. We see one every 10 years or so. What is there in the record in this case that should convince us that Judge Halpern didn't evaluate all of this evidence according to the Elliott five-step test? He says he did. He says he did. And what is there in the record that gains say that he did? Well, when the tax court concludes that, in essence, she's just the titular head of the company. Well, she's the Dowager Queen. Half the old man who started this whole empire died while she was the big boss and still is. That isn't unusual in the real world to small family-held corporations. It's not unusual in the real world. And, in fact, she was one of the founders in 1932, worked at the company since 1932. She was in charge of all the books and records while her husband started, you know, working with the trucks. When he died in 1991, she took over all the operations of the company. Doesn't the judge give her credit for being still a very important cog in the wheel, even though people can argue about who did what, who did the most work with the trucks and who did the most work? That was a whole separate company anyway, wasn't it? Well, they had numerous companies. They had numerous companies and a couple companies that she wasn't even involved in. But with regard to this company, you know, my problem with the judge's preconceptions of this case was very similar to what Your Honor had advanced, which was that, well, she's in her early 80s and she's female, so therefore, you know, is she really running this company or is she retired? Well, we put on all this evidence to show and rebut basically his preconception of the case, and he ignored that evidence. Because all the evidence that came in, and there really was no evidence to refute what we brought in, that she was the company. She ran the company. But she was out there, not only working during the day, but actually going out at night, meeting the politicians and involved in various things. Mr. Pannis, as I read what the tax court judge said, he conceded, if you will, or acknowledged, the very important role that she still has of being the face of the company, of being out there in the community. She's got all these relationships that she's nurtured over now almost 70 years with these municipalities. But you would concede, would you not, that her day-to-day involvement in the company is substantially less than it was, say, 20 years ago? I'm not sure I can concede that, because that wasn't what I heard. Well, I thought the judge pointed out that, you know, at one point she was keeping all the books and records, essentially the collections and so on, of the business. And that took a substantial amount of her time, but she doesn't do that anymore. What she testified to was that a lot of the duties were delegated in various ways. In other words, the thing that she used to do all of it was delegated among her three sons, and each one had a particular role as to what they did. But she oversaw it, and they reported to her. So, for example, Myron Harrison, who was in charge of the accounting, in charge of making sure that money came in and money went out in the administration, he would have to bring everything to her for her approval. She was the only one that could sign checks unilaterally. All the other, the sons, they had to get her signature on a check to do anything. She was the one that the bank looked to, and the bank president testified that if she wasn't involved in these personal guarantees, there would be no way they would have done it. Okay. Just before we let you reserve some time, just to refresh my memory, the first time that this was around, she was claiming the salary of what? It varied each year. Yeah, but the range was? Between 800-something at the high and 600-something at the low. Okay, and now what is being claimed? Well, what we're requesting, based on the independent investor test, and being very conservative using the government's 14.9 percent, is full salary for 1995, which would be, I've got the exact numbers, 860,682. 1996 would be 772,000. And 1997 would be 378,000. And the tax court allowed? 5, 5, and 4. 5, 5, and 4. Okay. Can you address the other concern that the tax court mentioned about the fact that this company had never paid a dividend? Your Honor, we brought that up with regard to the Ninth Circuit last time, that most small companies like this do not pay dividends, and there was many legal cases, which I can't off the top of my head cite, but we did cite before, with regard to that is not a factor. I mean, it's a small factor, but it's not an overriding factor as to determine whether or not this was, in fact, compensation. The thing about dividends, and most of the cases that the government's been involved in where they try to recharacterize compensation as a dividend, is a person, basically a family member, sitting at home receiving money for no work. They're just getting the profits of the company because they're a family member. The overwhelming evidence in this case that was unrefuted was that Mrs. Harrison wasn't just a family member sitting at home. She was working 40 hours a week, not counting all the social stuff that she did to keep the company's face out in the public and with the municipalities, and that she approved and was part of every decision. Yeah, but you're going back to the reasonableness argument. The question I'm raising, which I thought the tax court judge alluded to, was the problem with closely held companies that by not declaring a dividend and setting very high compensation for the officers of the closely held corporation, the tax implication of doing that is that the corporation then gets the full deduction for the $800,000 that you're seeking. As opposed to the commissioner collecting a tax on the dividend that's distributed and the corporation getting a lesser deduction on the reasonableness of the salary because they wouldn't be able to pay an $800,000. The entire recharacterization under tax law, the whole issue is whether it's deductible by the corporation. And salary is deductible and dividends are not. So, therefore, there would be more tax at the corporate level if it was determined to be a dividend. But when you focus on whether it is a dividend or not, you have to decide whether or not the individual earned that salary. And one of the tests that the appellate court has come up with, which was the Seventh Circuit's decision in Xacto Spring, they said let's look at this objectively because we could subjectively look over the shoulder of every single corporation and insert our wisdom into whether they decide that this is salary or not. Xacto Spring case came in and said let's look at it objectively. Would an independent investor, if you were a shareholder and you were getting a return on your money of X, whatever that number is and we can debate what that number should be, but if we have an objective standard, would the investor be satisfied with the salary of the CEO in this particular case based on the rate of return? And in the Harrison case, the answer is yes because over the life of the company, the rate of return has been tremendous. There was one year in the audit years, okay, one year. Except that the hypothetical investor wouldn't ever earn anything on the investment because it all goes out to salary under your theory of the case. No, that wouldn't be the case. I mean, in this case, because of the fact that it's a family-run business, there aren't any independent investors. But in order to take the test, to see the objectivity of the test, you insert an objective, you know, independent investor and determine what the growth is on return on equity. Okay. I think that if you want to save some time for rebuttal. Yes, thank you. We'll hear from the Governor. May it please the Court, I'm Karen Gregory for the Commissioner of Internal Revenue. The Harrison Company is essentially re-arguing the case that it already lost before this Court. Why didn't the government cross-appeal in this case? The government was frankly was willing to settle after the original decision. The government's not out to get Mrs. Harrison or her sons or the company or anything like that. The government was willing to accept your Court's decision on this case. Apparently, the company viewed things differently, and here we are again. But the critical point that is missed here is that the statute requires that the deduction is only allowed for services actually rendered, and it must be reasonable compensation. So that requires the company to show a direct dollar link to compensation and services. That has never been done in this case. And to revert back to this independent investor test ignores that requirement entirely. That's why one of the many reasons why this Court uses a multi-factor test and has repeatedly held no single factor is determinative. That's why the case was remanded because you shouldn't say that's why the case was remanded. That's why the Court affirmed the tax court's prior decision's application of the Elliott's factors. There was nothing remanded on that point except for the issue of Mrs. Harrison's role in the company. There was a disagreement between the tax court and the appellate court on how much she did and how much she should be compensated for that. So, but this Court also found that the compensation that they had deducted for her was, in fact, excessive. So rather surprisingly, for the first year at issue, the company has reproposed the exact same number this Court has already projected. So for that year, the appeal should be dismissed just on that basis alone. It should also be dismissed with respect to the third year because the number they're not on the tax court. What are they appealing? So then we have the middle year. This argument applies to all of the years, but the only sort of laggy year, if you will, would be the middle year. And that is the fact that the company has utterly failed to make its case. So what was the tax court supposed to do on remand? It had nothing to work with. It had this Court's guidance setting a bottom threshold. It had nothing else to work with. It had already analyzed the Elliot's factors. That analysis had been upheld. What more was there to do, given that the taxpayer had made its case? What was the ‑‑ what would be the spread between the taxes actually paid by this happy little family and under the two theories? If you took out the double taxation of the corporate taxes and then tax the dividends again when they're paid to the owners, what's the difference? The lawyers who set these corporations up get paid a lot for setting them up and making sure that they comply with 162A. There's usually an enormous amount of money involved in what ‑‑ in the success or failure of the tax structure. What is it in this case? What's the difference? I don't know the precise answer. Did the government ever run a computer on it? It's entirely possible that someone at the Internal Revenue Service has. I personally have not. I don't know. It's morbid curiosity on my part. Well, the one ‑‑ this isn't entirely answering your question, but it sort of gives you an idea. Based on the tax court's decision of reasonable compensation being the 500, 500, 400 matter, that would mean that the corporation owes an additional, say, 70,000, 60,000, and 24,000 for the years in issue. Mrs. Harrison has already paid, presumably, her income tax returns on an issue, but I'm not aware that she's being audited or anything personally. But assuming that she reported that income and paid taxes on it, that's not going to change. She's got to pay taxes on that regardless. Well, she pays taxes on whatever she collects from the company. Right. Subject to whatever deductions she might have. So I think the difference would be at the company level and then, you know, it flows through eventually as to how that goes through. But you mentioned that the attorney spent a lot of time dealing with this issue. It's not a new law. No, it's been ‑‑ And a competent business person would anticipate that when there was a huge increase in the company's deduction for officer compensation, that they ought to have an explanation ready for the IRS. In this case, 1994, the year before the years in issue, Mrs. Harrison made roughly half of what they paid to her in 1995. To this day, the company has not provided any explanation for that increase. And, in fact, the first Elliott's factor, which is role in the company, says when you do have a big increase like that, there has to be a comparison of the services and the compensation in the lower year with the services and the compensation in the higher year to see what happened that would justify that increase. There's no explanation in this case. Not only that, this court has already struck down that number and they've reproposed it again with no explanation. So, you know, I can see what the task court did in its opinion. It is short, but it didn't have anything to work with. And it had this court's mandate that it could not go below a certain number. So it didn't. So it didn't. And I guess that's what's causing me the heartburn is the only thing I can find is page 4 of the supplemental. Oh, you mean of the task court? Yeah. It does explain it. I'm not page 4, but really, I mean, it goes through 8 1⁄2 pages and then it just denounces 500, 500, 400. Well, if you put it in context a little bit, I'm looking at page 6 right now. I guess this is tab 9 of the excerpt. And the task court explains that Petitioner bears the burden of proof and we have little, if anything, in the way of guidance from Petitioner to aid us in fixing a number for reasonable compensation. So as you pointed out earlier, the task court already went through the Elliott's analysis and that was largely affirmed. The only thing that wasn't was the role in the company and the fact that, okay, this court articulated this is her role, this is what she was doing. How much does she get paid for that? And then we set a floor. And you set a floor. And arguably a cap because you said it was too hot and it had to be less than what it was before. Okay, so somewhere between. Correct. Yeah, okay, all right. Well, how's the task court supposed to figure that out? The company knows what she's doing and what the finances are and everything else. Does the task court supposed to get out a crystal ball and say, hmm, let's see, what she did? It had nothing to work with and it said it had nothing to work with. So why didn't why shouldn't Judge Halperin then have granted the taxpayers' motion on remand to reopen so that they could put some additional evidence in as they requested? Why should they get a second bite at the apple when they failed to make their case in the first place? There was no compelling reason for that. There was no reason why they couldn't have done this at the get-go. They've known since 1932 or something that this company works, does business with municipalities. That wasn't something that was unforeseen. But the Sons, what happened to their rate of? Their compensation? Yeah. The service did not challenge their compensation. I think that that was persuasive to the panel previously. Yeah. And another important point is Mrs. Harrison was the titular head. This Court found she was performing services, but the record also shows that this company was not managed by her individually. It was managed by a board, which was comprised of her and her sons, and they agreed on all management decisions. So she may have been the one signing the check by herself, but she didn't sign checks until the board had agreed to make the purchase. Right. Okay. Any further questions? I think that there hasn't been any demonstration that the tax court's decision was incorrect. It complies with this Court's prior order, and it should be approved. Thank you. If I didn't know any better, I would think that maybe we had lost in the Ninth Circuit the last time we were here after listening to counsel. Well, you didn't win on 862,000, and now you're back asking for the same number. So the question is, what are we supposed to do with the record? Well, I understand, Your Honor, but what we were here last time was appealing an order of a tax court judge who had awarded her approximately 100,000 per year. Okay. And so we're looking at it, and, you know, even the tax court, based on your ruling, went up to 554. So now he's split the difference. Yes. Right. And when you say we lost on the 860, we didn't lose on the 860. What we lost on was that this Court said, okay, let's evaluate her role in the company and say that that may be unreasonable the entire package of her compensation. So in order to look at each year, we have to determine, okay, under the circumstances of a particular year, was there a return on equity for that year? So what's your explanation for counsel's challenge of the difference in Mrs. Harrison's duties between 1994 and 1995 to justify doubling her compensation? Well, a couple things. One, 1994 was an issue, so we never briefed that difference, and she's bringing that up new. But I will answer the question anyway because I know the reason, that they added additional municipalities that increased the revenue for the company. And who brought that in? Mrs. Harrison brought it in. So that was why she received so much more. They expanded their base of municipalities. None of this was part of the tax court record, though, so I'm telling you what I know to answer your question. But it wasn't evidence in front of the tax court because 1994 wasn't in evidence. And she says, well, how are you supposed to have a crystal ball? Well, that's the whole problem with these type of cases. When you're going to sit in judgment of a corporation and what they pay their individuals, are we going to be subjective or are we going to be objective about it? And the only thing that I can say as a tax attorney is, if you're objective, you have to have some kind of numbers test to determine if it's reasonable. That's what the Seventh Circuit tried to do in Xacto Springs. Using the objective criteria, the only year where she should really have a reduced salary was the third year, the 1997 year, because the company didn't have a profit that year. And therefore, an independent investor might look at that and have a question about it. I'll tell you in reality, though, what happened that year is that the company had to comply with AB 939, which was that they had to go out and buy all this new equipment for environmental waste, and they had a one-year hit. And because of that, if you were an independent investor in a company that had a profit for every year except one, and it was for a rational reason why there was a hit that year, I don't think you would begrudge the president of the company for her salary in complying with a new law that they had to incur all these additional expenses just in that year. Your time has expired. Thank you. Thank you. The case just argued is submitted for decision. That concludes the Court's calendar for this morning. And the Court stands adjourned.
judges: Goodwin, Schroeder, Tallman